In the Matter of IRWIN A. ROSENBERG (Admitted as IRWIN ALLAN ROSENBERG), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, May 10, 1993

APPEARANCES OF COUNSEL

*Robert H. Straus,* Brooklyn, for petitioner.

*Nathan R. Sobel,* Brooklyn, for respondent.

## OPINION OF THE COURT

Per Curiam.

In this proceeding, the petition sets forth six charges of professional misconduct against the respondent. The Special Referee sustained all six charges. The petitioner moves to confirm the report of the Special Referee and the respondent has submitted a brief in answer thereto.

Charge One alleged that from 1966 to the present time, the respondent was employed at the Surrogate's Court, Kings County, and while so employed, practiced law in violation of the Rules of the Chief Administrator of the Courts. From 1966 to 1984, the respondent was a Law Assistant, and in 1984, the respondent became the Chief Law Assistant in that court, a position which he has held continuously to the present date.

Specifically, in 1985 the respondent was retained by one Elena Celentano to probate the last will and testament of her deceased mother, Vivian Celentano. The respondent accepted this retainer with the full knowledge that the will would have to be probated in the court in which he was employed. Thereafter, the respondent failed to apply to the Chief Administrator of the Courts for permission to engage in the private practice of law with respect to the subject estate. In May 1985, acting as the attorney for the estate, the respondent filed a probate petition and other relevant papers in the Surrogate's Court, Kings County, but, in doing so, concealed the fact that he was the attorney for the estate. On June 6, 1985, the will was admitted to probate and an administratrix was appointed. The respondent was paid the sum of $1,200 for his legal services.

Charge Two, which also concerned the aforementioned estate, alleged that the respondent agreed to sell real estate belonging to the estate for a fee of 1% of the purchase price, but not less that $750. Again the respondent failed to apply

for any approval from the Chief Administrator of the Courts to engage in the private practice of law. At the closing held on January 19, 1989, the property was sold for a purchase price of $248,000, entitling the respondent to a fee of $2,480. The respondent then improperly converted to his own use the sum of $3,520 by drawing a check payable to himself in the amount of $6,000, without the knowledge or consent of Elena Celentano, the administratrix, who had since moved to Seattle, Washington.

Charge Three alleged that the administratrix filed a complaint with the Grievance Committee, by letter dated February 23, 1989, alleging that the respondent had engaged in the "larcenous" taking of $3,520 from her mother's estate. By letters dated February 24 and February 27, 1989, addressed to the complainant's attorney, the respondent attempted to induce the administratrix into withdrawing her complaint. The letters were accompanied by checks totalling $3,520.

Charge Four alleged that in 1976 the respondent prepared a will for one Betty Ann Schultz, wherein he named himself as alternate executor. Following the death of Betty Ann Schultz in May 1982, the respondent presented the will in October 1982 in the Surrogate's Court, Kings County, for probate. The respondent failed to apply for approval from the Chief Administrator of the Courts to permit him to engage in the private practice of law with regard to this estate. In probating this will, the respondent listed himself as sole executor and requested that letters testamentary be issued to him. In filing the papers with the court, the respondent failed to disclose the fact that he was an attorney or that he had drafted the will. The respondent received $8,000 from this estate for services rendered. The respondent thereafter failed to file an affidavit with the court, setting forth the total commissions paid to him and the total attorney's fees paid to him for services rendered on behalf of this estate. Further, the respondent failed to report as income on his 1982 Federal income tax return the $8,000 which he earned for services rendered to this estate.

Charge Five alleged that in 1986, the respondent drafted a will for Ruth Gelber, in which he named himself as executor and as a beneficiary. Following the death of Ruth Gelber in May 1988, the respondent, acting as a sole executor of this estate, submitted the will to the Surrogate's Court, Westchester County, for probate. The respondent failed to apply for approval from the Chief Administrator of the Courts to permit

him to engage in the private practice of law with regard to this estate.

Charge Six alleged that in 1984, the respondent prepared a will for Olga Keesy, in which he was named as sole executor. In 1986, the respondent drafted a codicil which left unchanged his appointment as executor. Following the death of Olga Keesy in January 1988, the respondent submitted the will and codicil to the Surrogate's Court, Kings County, for probate. The respondent failed to apply for the prior approval of the Chief Administrator of the Courts to permit him to engage in the private practice of law with regard to this estate. The petition also alleged that in listing himself as sole executor and requesting letters to administer the estate, the respondent failed to file with the petition a statement disclosing that he was an attorney, that he was acting as counsel, and that he had drafted the will and codicil which he was offering for probate. The respondent received $46,000 from the estate for the legal services rendered. Thereafter, the respondent failed to file an affidavit with the court, setting forth the total commissions paid to him and the total attorney's fees paid to him for services rendered to the estate.

After reviewing all the evidence adduced, we find that the Special Referee properly sustained all of the charges of professional misconduct alleged against the respondent. Accordingly, the petitioner's motion to confirm the report of the Special Referee is granted.

In determining an appropriate measure of discipline to impose, we have taken into consideration the serious personal problems which the respondent was experiencing at the time, the character evidence submitted, and the absence of any prior disciplinary history. In view of the respondent's misuse of his escrow account and his subsequent attempt to induce the withdrawal of a complaint against him, the respondent is guilty of serious professional misconduct. Accordingly, the respondent is disbarred.

BRACKEN, J. P., SULLIVAN, BALLETTA, ROSENBLATT and EIBER, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Irwin A. Rosenberg, is disbarred and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Irwin A. Rosenberg, is commanded to desist and refrain (1) from practicing law in any form, either as principal or as agent, clerk or employee of another, (2) from appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) from giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) from holding himself out in any way as an attorney and counselor-at-law.

# MEMORANDA

OF

*DECISIONS RENDERED DURING THE PERIOD EMBRACED IN THIS VOLUME*